**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: January 27, 2026
Date Decided: January 28, 2026

William B. Larson, Jr., Esquire
John J. Klusman, III, Esquire
Manning Gross + Massenburg LLP
500 Delaware Ave., Ste. 200
Wilmington, DE 19801

Josiah R. Wolcott, Esquire
Connolly Gallagher LLP
267 E. Main St.
Newark, DE 19711

Seth L. Thompson, Esquire
Parkowski, Guerke & Swayze, P.A.
2691 Centerville Road, Ste. 310
Wilmington, DE 19808

> RE: *Karen Callahan v. Joseph Nelson*,
> C.A. No. 2024-1099-BWD

Dear Counsel:

This letter opinion resolves exceptions to a partition trustee's report recommending a procedure to govern the private auction of a Goldendoodle named Tucker. The partition trustee's report recommends a single-submission blind-bid auction. The Court adopts the partition trustee's recommendation, for the reasons explained below.

## I.      PROCEDURAL HISTORY

As the Court has now described in three written rulings, this action concerns a petition to partition a Goldendoodle named Tucker. *Callahan v. Nelson*, 2025 WL 3181943 (Del. Ch. Nov. 14, 2025) [hereinafter Op.]. Karen Callahan ("Petitioner") and Joseph Nelson ("Respondent") acquired Tucker while they were dating. *Id.* at *2. Petitioner and Respondent ended their relationship in May 2022, and Petitioner has not seen Tucker since. *Id.* The Delaware Superior Court previously determined that Petitioner and Respondent have joint ownership interests in Tucker. *Id.* at *2 n.4.

On October 28, 2024, Petitioner initiated this action through the filing of a Petition for Partition (the "Petition"), seeking an order for partition of Tucker. Dkt. 1. Respondent moved to dismiss the Petition, arguing that the Court should refuse to order the "unprecedented" relief of partitioning a companion animal. Dkts. 4, 7. On May 7, 2025, the Court issued a Memorandum Opinion Denying Motion to Dismiss Petition for Partition (the "Memorandum Opinion"), denying Respondent's motion to dismiss. *Callahan v. Nelson*, 2025 WL 1326719 (Del. Ch. May 7, 2025) [hereinafter Mem. Op.]. The Memorandum Opinion explained that although Delaware's partition statute governs only the right to partition real property, courts of equity also have historically upheld the right of a tenant in common to seek a

partition of personal property. *Id.* at *2. Because the law views a pet as personal property, a jointly owned pet must be subject to a partition remedy. *Id.* The Memorandum Opinion reasoned that, without an equitable partition remedy, the parties might remain trapped in joint ownership of their pet indefinitely, notwithstanding their mutual desire to part ways. *Id.* at *3. The Memorandum Opinion concluded that "crafting a fair and orderly process to resolve the rights of these co-owners so they can move on is in the best interests of everyone involved, including Tucker." *Id.* Although the Court did not decide the appropriate partition procedure at that time, the Memorandum Opinion stated that "[t]he right procedure w[ould] result in one party owning Tucker and the other receiving a monetary award." *Id.* at *1.

The Court directed the parties to meet and confer on an appropriate partition procedure, but the parties were unable to reach agreement. Op. at *3. Petitioner advocated for an auction in which the party willing to pay the highest price to the other will acquire Tucker. *Id.* Respondent argued that the Court should award ownership based on an evaluation of Tucker's best interests. *Id.* On November 7, the Court held an evidentiary hearing to provide the parties an opportunity to supplement their legal arguments with evidence to support their positions on the appropriate partition procedure. *Id.*

On November 14, the Court issued an Opinion on Partition of Companion Animal (the "Opinion"). *Id.* at *1. The Opinion acknowledged that although Delaware law recognizes a common law right to partition personal property, the procedure for partitioning a companion animal is "uncharted." *Id.* at *4. The Opinion considered several potential partition procedures. *Id.* at *4. It noted that under Delaware's real property partition statute, the default procedure is a physical, in kind, division of the property. *Id.* That procedure would not work for a living being. *Id.* The Opinion further considered that under the partition statute and at common law, the alternative procedure for partition is a sale at "public vendue" intended to put the property to its highest and best use. *Id.* The Opinion rejected the concept of a public auction because the parties attach far more value to Tucker than would any member of the public. *Id.* at *4 n.19. The Opinion also considered alternative partition procedures that the parties had not raised. *Id.* It noted that an appraisal of Tucker's fair market value is unlikely to be helpful given the subjective value each party places on Tucker. *Id.* It also rejected the concept of a "partition in time," which could look like a joint custody arrangement, because the parties no longer wish to be bound to one another and such an arrangement is unlikely to be successful. *Id.*

The Opinion concluded, instead, that when partitioning a companion animal, "our preexisting common law governing property ownership provides the right place to start the analysis." *Id.* at *5. The Opinion therefore "beg[a]n with a presumption that partition of a companion animal should occur through an auction designed to maximize value for the co-owners." *Id.* The Opinion held that such a "presumption may be rebutted, however, because a court of equity has broad latitude to balance various interests and fashion remedies as appropriate." *Id.* The Opinion recognized that

> [d]ogs are property, but they are not furniture; they are living, sentient beings with value that transcends economics. If the equities of a particular case require awarding ownership to one owner over another—particularly to prevent harm to a sentient being—a court of equity is bound to consider those facts as well.

*Id.*

Turning to the specifics of this case, the Opinion decided that the facts here "do not support deviating from the common law presumption of a value-maximizing auction," explaining that "[i]t is clear from the evidence that both Petitioner and Respondent care deeply for Tucker, and that either one would make a suitable pet owner." *Id.* at *6. The Court therefore appointed a trustee (the "Partition Trustee") to conduct a private auction to determine Tucker's ownership. Order Appointing Partition Trustee, Dkt. 29. The Court did not decide how the auction would work

and instead directed the parties to "meet and confer with the Partition Trustee on procedures to govern the auction." *Id.* at 2.

After meeting and conferring with the Partition Trustee, the parties reached agreement on many, but not all, of the procedures to govern the auction. On January 6, 2026, the Partition Trustee submitted a Report of the Partition Trustee (the "Report") and a [Proposed] Order Regarding Auction Procedures (the "Proposed Auction Order"). Dkt. 40. On January 20, the parties filed exceptions to the Report and the Proposed Auction Order. Pet'r Karen Callahan's Objs. to the Tr.'s Report [hereinafter Pet'r's Exceptions], Dkt. 41; Notice of Exceptions of Resp't Joseph Nelson to Partition Tr.'s Report and Proposed Order Regarding Auction Procedures [hereinafter Resp'ts Exceptions], Dkt. 42. The parties filed responses on January 27. Dkts. 44–45.

## II. ANALYSIS

The Report explains that, at this stage, "[t]he key point of contention between the parties is the type of auction" in which Tucker will be partitioned. Report at 2. Petitioner advocates for a "transparent" auction—sometimes called an "open outcry" or "English" auction—in which the parties would openly submit topping bids until one bidder prevails. Respondent, on the other hand, proposes a first-price sealed-bid (or single-submission blind-bid) auction format. *Id.*

Based on a careful analysis of the parties' positions and other alternatives,[1] the Partition Trustee recommends a single-submission blind-bid auction. *Id.* at 3. After *de novo* review, I adopt the Partition Trustee's recommendation for the well-stated reasons in his Report.

The Opinion ordered "an auction designed to maximize value for the co-owners," and more specifically, to "maximiz[e] [the] recovery" "for the losing bidder."[2] Op. at *5. As the Report explains in detail, a single-submission blind-bid auction will accomplish that goal by "incentiviz[ing] the parties to immediately put forth their highest purchase price." Report at 3. A single-bid "format avoids one party's 'live' bidding influencing the other's bidding in a reductive manner." *Id.* at 4 (quoting *Huff Fund Inv. P'ship v. CKx, Inc.*, 2013 WL 5878807, at *14 (Del. Ch.

---

[1] The Report acknowledges that neither party has proposed a descending-bid auction (also known as a "Dutch auction") or a second-price sealed bid auction (also known as a "Vickrey auction"), and in any event, "[n]either type works well here," including because "[t]he descending price structure of a Dutch auction necessitates a starting point that would be largely speculative and thus potentially limiting, given the relatively subjective, private value of Tucker." Report at 2–3 n.8.

[2] Petitioner argues that a first-price sealed-bid process is inconsistent with the Opinion's direction to conduct an "auction." Pet'r's Exceptions at 4–5 (citing Black's Law Dictionary as defining an "auction" to mean "[a] public sale of property to the highest bidder; a sale by consecutive bidding, intended to reach the highest price of the article through competition for it"). Not so. The Court's prior decisions, while declining to rule on the appropriate form of auction, contemplated a blind-bid format as one possibility. *See* Mem. Op. at *4 ("As one possibility, the parties could submit themselves to a blind bidding auction, where the highest bidder buys out the lower bidder's interest.").

Nov. 1, 2013)). In an English-style auction, one party could leverage his or her superior financial position to outbid the other until the party with lesser resources is forced to stop bidding. Such a scenario "produces a price equal to the second-highest bidder's reserve price (plus one bid increment, to guarantee victory)." *Id.* A sealed-bid auction avoids that result and creates a level playing field that will result in a maximum value for Tucker in the form of the winning bidder's highest purchase price.

Additionally, while an English auction "make[s] sense for auctions where bidding must be encouraged via the high bidder winning while retaining a surplus[,]" that logic "is not particularly applicable here, with two—and only two—bidders vying for an item with a highly subjective valuation." *Id.* at 4–5. As the Partition Trustee rightly points out, "Tucker is not an ongoing, theoretically perpetual enterprise[3] where the winning bidder needs a slight discount to ensure the purchase makes fiscal sense and yields a surplus." *Id.* at 5 (footnote omitted).

---

[3] *See* Report at 5 n.16 ("As pet owners know all too well and implicitly accept, our time with a companion animal is finite. Like Riley Green in 'I Wish Grandpas Never Died,' the undersigned also wishes 'good dogs never got grey and old,' but that is as realistic as his suggestion that every road be named 'Copperhead.'"); *Callahan v. Nelson*, 2025 WL 3442190, at *4 (Del. Ch. Dec. 1, 2025) ("American country musician and songwriter HARDY sings that 'dog years' go 'by seven times too fast.' The painful reality of this partition action is that the asset in dispute is more ephemeral than most.") (quoting HARDY, *Dog Years* (Big Loud Records 2025)). *See generally* CHRIS YOUNG, *All Dogs Go To Heaven* (Sony Music Entertainment 2023); CHRIS STAPLETON, *Maggie's Song*

On exceptions, Petitioner suggests that one virtue of an English auction is that the urgency created by an active bidding process "often pushes bidders beyond what they initially believed they would pay, resulting in higher clearing prices." Pet'r's Exceptions at 8. I am not convinced that more "competitive energy" is needed to encourage the parties to bid here. It is clear that, having already spent tens of thousands of dollars in legal fees across four courts, these parties are highly motivated. A single-submission process will encourage the parties to think carefully about how much they are willing to spend and incentivize them to come forward with their best and final offers.

Petitioner also argues that the Court's decision in *In re Interstate General Media Holdings, LLC*, 2014 WL 1697030 (Del. Ch. April 25, 2014), supports an English auction. That case concerned a petition for judicial dissolution of a limited liability company where the petitioners and respondents—members of the company—asked the Court to set a procedure governing "how the dissolution should be effectuated." *Id.* at *1. The petitioners asked for a public, English-style auction, while the respondents sought an "auction in which each bidder submits only a single, sealed bid." *Id.* The Court chose a third option—a private, English-style auction in

---

(Sound Records 2020); LUKE BRYAN, *Little Boys Grow Up And Dogs Get Old* (Capitol Records Nashville 2016).

which only the parties could participate. *Id.* at *15. *Interstate*'s reasoning is distinguishable for several reasons. First, to state the obvious, one cannot value a dog's emotional value the same way one values expected returns from a company. Because the *Interstate* court sought to maximize value for equity owners of an LLC, it considered the bidders' "equal access to the Company's information and employees," as well as the parties' respective "toeholds" (*i.e.*, their preexisting equity interests) in the LLC, concepts that simply do not translate when the asset to be auctioned is a companion animal. *Id.* Second, *Interstate* noted a lack of evidence that the parties had "divergent perspectives on [the company's] value," while here, the parties' views on value may in fact vary widely.[4] 2014 WL 1697030, at *15. And third, *Interstate* considered that "neither [party] ha[d] any discernable advantage in an 'English-style' auction,"[5] whereas here, the parties do not have the same resources available to them.[6] For these reasons, despite the different result

_____

[4] Tr. of 11-7-2025 Evidentiary Hearing at 172:10–19 (Respondent's counsel arguing that "it is reasonable to think that" "the difference between $2 million in assets and $750,000 in assets is going to make a difference to [the parties'] ability to" bid in the auction), Dkt. 35.

[5] *Interstate*, 2014 WL 1697030, at *15 ("There also has been no argument by either party that the other side has some material advantage, fair or otherwise, in terms of its ability to obtain financing and win an auction on that basis.").

[6] *See* Answering Br. in Opp'n to Pet'r's Request for a Transparent Auction as the Next Step in the Process for Partitioning Tucker at 9 ("Petitioner's proffered transparent auction decidedly tilts the scales in favor of parties with greater economic means: [i]n this case,

reached in *Interstate*, I remain convinced that the Report should be adopted and Petitioner's exceptions overruled.

Finally, the Proposed Auction Order contemplates that after the results of the auction have been determined, the Partition Trustee will file a Return of Sale with the Court that will, among other things, indicate "the date and time the Partition Trustee proposes for Tucker to be delivered to the Partition Trustee's Office and then promptly retrieved by the winning bidder, if the winning bidder is not already in possession." [Proposed] Order Regarding Auction Procedures ¶ 6. Respondent asks that if the winning bidder is not already in possession, the losing bidder be given an opportunity to move to stay the outcome of the auction so that Tucker is not "moved several times, which would disrupt his life and result in unnecessary stress to Tucker and the parties." Resp'ts Exceptions at 2. I have modified the Proposed Auction Order to clarify that if a party moves to stay after delivery of the auction results, the date for delivering Tucker will be stayed automatically pending resolution of the motion.

---

Petitioner. There can be no dispute that Petitioner's superior finances would place her on higher ground and not produce an objective result . . . ."), Dkt. 15; *see also* Report at 4 (noting that "a difference in the parties' liquidity cannot be equalized by obtaining financing collateralized by Tucker").

## III.  CONCLUSION

For the reasons explained above, the Court overrules Petitioner's exceptions and adopts the Report.  The Court will enter the Proposed Auction Order with the clarification identified above.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:  All counsel of record (by File & ServeXpress)